United States District Court
Southern District of Texas
ENTERED
November 23, 2021
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| KEVIN CLOYD, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-20-3714 |
| | § | |
| KBR, INC., | § | |
| | § | |
| | § | |
| Defendant. | § | |

# MEMORANDUM OPINION

The facts of this case are unusual and sad. In 2020, the plaintiffs, three civilian contract employees, were working under a government contract on an Army military forward operating base in Iraq. Ballistic missiles fired from Iran hit the base and injured the plaintiffs, one grievously. They seek damages from KBR, Inc., the parent of both the subsidiary entity that contracted with the government and of another subsidiary entity that employed the plaintiffs. The claim is for negligence and gross negligence in failing to evacuate them before the attack occurred.

KBR has moved for summary judgment on two grounds: first, that the Defense Base Act, (DBA), 42 U.S.C. §§ 1651–54, bars the claims against it because it was the plaintiffs' employer under the DBA; and second, that the combatant activities exception to the Federal Tort Claims Act, (FTCA), 28 U.S.C. § 2680(j), preempts the plaintiffs' claims. (Docket Entry No. 39). The plaintiffs responded and KBR replied. (Docket Entry Nos. 42, 44). The court held oral argument.

Based on the pleadings, the motion and response, the record evidence, the arguments of counsel, and the applicable law, the court grants the motion for summary judgment and enters final judgment by separate order. The reasons are set out below.

## I. Background

In January 2020, the plaintiffs were among contract employees working alongside thousands of troops and other support contractors at the United States Army forward operating base in Al Asad, Iraq. The plaintiffs were employed by Services Employees, International, Inc. (SEII), a KBR, Inc., wholly owned subsidiary, to carry out services under the U.S. Army Logistics Civil Augmentation Program (LOGCAP IV) Contract. KBR, Inc. (KBR) is the parent company of a number of subsidiaries. KBR owns a holding company, KBR Holdings, LLC, which in turn owns KBR Services, LLC (KBRS), and SEII. Another KBR subsidiary, Kellogg Brown & Root Services, Inc., which later became KBRS LLC, signed the U.S. Army Logistics Civil Augmentation Program (LOGCAP IV) Contract with the United States. KBRS is what KBR calls a "project entity." (Docket Entry No. 39 at 17; Docket Entry No. 39-33 at 23, 26). SEII is what KBR calls a "payroll company." (Docket Entry No. 39 at 17). SEII issued paychecks and assigned employees to KBRS to work on international contracts, including the LOGCAP IV Contract. (Docket Entry No. 39-33 at 6, 12, 44–45). Yet another "payroll company," KBR Technical Services, Inc. (KBRTSI), provided paychecks to supervisors and other personnel working in support of the LOGCAP IV Contract. (Docket Entry No. 39-33 at 44). The court joins Bryan Garner and many others in lamenting acronyms and reluctantly uses them here only to avoid even more clunkiness and confusion. To be helpful, a list of the company acronyms and what they stand for is included in Appendix A.

In January 2020, Iran launched a massive ballistic missile attack on the Al Asad Army base. The attack was in retaliation for the Army's killing of a senior Iranian general five days before. (Docket Entry No. 1-1 at 5, 10). The plaintiffs were working under the LOGCAP IV Contract when the attack occurred. They allege that KBR should have evacuated them and the

many other contract employees working on the base before the attack occurred. (Docket Entry No. 1-1 at 11). They allege that KBR's failure to do so was negligent and seek damages under Texas law. (Docket Entry No. 1-1 at 10–11).

As noted, KBR is the parent company that wholly owns the various subsidiaries at issue here. Each plaintiff signed an Employment Agreement with SEII. (Docket Entry Nos. 42-3, 42-4, 42-5). Those Agreements defined SEII as "Employer," but in each Agreement, the plaintiffs agreed that their "sole recourse for any injury . . . against Employer and/or any other parent or affiliate of Employer arising out of or in the course of employment under this Agreement shall be determined under the provisions of the Defense Base Act." (Docket Entry Nos. 42-3 at 1, 42-4 at 1, 42-5 at 1). The DBA is a workers' compensation scheme for overseas contractors. The DBA provides an exclusive remedy, preempting state-law causes of action. 42 U.S.C. § 1651(c).

Kevin Cloyd worked under the LOGCAP IV Contract as an Assistant Fire Chief, providing fire protection services. (Docket Entry No. 43-13 at 13). Nickalandra Witherspoon was a Senior Security Officer working on security clearances and inspections. (Docket Entry No. 43-13 at 5). Lucila Andrade was a Food Service Worker, working on preparing food service areas, serving food, and cleaning up. (Docket Entry No. 43-13 at 7).

Cloyd, Witherspoon, and Andrade sued KBR in Texas state court for negligence and gross negligence, alleging that KBR was "aware of the heightened risk of a strike in the face of escalating regional violence," but "left [the] Plaintiffs and the other employees of [SEII] . . . at the base, in direct risk of substantial harm." (Docket Entry No. 1-1 at ¶ 5.39). The plaintiffs alleged that KBR negligently failed to "evacuate contractors" or "provide security measures," such as "communication of safety information and status updates, a means of evacuating Iraq when

conditions became unreasonably dangerous, and protection from violent attacks." (Docket Entry No. 1-1 at ¶¶ 6.2, 6.3).

The court denied KBR's motion to dismiss, identifying factual gaps on preemption under the DBA and on the combatant-activities exception to the Federal Tort Claims Act. (Docket Entry No. 32). The gaps included facts necessary to determine: (1) whether the plaintiffs and KBR had an employment relationship, considering the work the plaintiffs were doing and the relationship between them, KBR, SEII, and the LOGCAP IV Contract; (2) whether the plaintiffs were engaged in combatant activities; and (3) what the discretion and authority that KBR—as opposed to the United States Army—had over the plaintiffs, including when and whether to evacuate them from the military base. (Docket Entry No. 32 at 12, 17–18)

After the parties engaged in discovery on these issues, KBR moved for summary judgment, arguing that undisputed record evidence shows that, as a matter of law, the plaintiffs' claims are barred under the DBA and by the combatant activities exemption to the FTCA. The first set of issues is whether KBR's subsidiary, SEII, was the plaintiffs' only employer, or whether KBR was also their employer for DBA purposes, barring the state-law claims under the exclusive remedy provision of the DBA. The second set of issues is whether the combatant activities exception to the FTCA applies and bars the negligence claims because the plaintiffs were integrated into combatant activities and KBR was subject to the military's control. Each set of issues is analyzed below.

## II. Summary Judgment

### A. The Legal Standard

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"

*Shepherd ex rel. Estate of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting Fed. R. Civ. P. 56(a)). "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 610 (5th Cir. 2018) (quotations omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating'" that "there is an issue of material fact warranting trial.'" *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018) (quoting *Nola Spice Designs, LLC v. Haydel Enters.,Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)). The moving party must demonstrate the absence of a genuine issue of material fact, but it need not need to negate the elements of the nonmovant's case. *Austin v. Kroger Tex., LP*, 864 F.3d 326, 335 (5th Cir. 2017). "If the moving party fails to meet [its] initial burden, [the summary judgment motion] must be denied, regardless of the nonmovant's response." *Pioneer Expl., LLC v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001)).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Willis v. Cleco Corp.,* 749 F.3d 314, 317 (5th Cir. 2014). "A party cannot defeat summary judgment with conclusory

allegations, unsubstantiated assertions, or only a scintilla of evidence." *Lamb v. Ashford Place Apartments LLC*, 914 F.3d 940, 946 (5th Cir. 2019). In deciding a summary judgment motion, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor." *Waste Mgmt. of La., LLC v. River Birch, Inc.,* 920 F.3d 958, 972 (5th Cir. 2019) (alterations omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)). When the facts are undisputed, the court "need only decide whether those undisputed facts are material and entitle the movant to judgment as a matter of law." *Flowers v. Deutsche Bank Nat. Tr. Co.*, 614 F. App'x 214, 215 (5th Cir. 2015).

**B. The Summary Judgment Record**

KBR submitted the following summary judgment evidence:

- the LOGCAP IV contract, (Docket Entry No. 39-2);
- the Performance Work Statement attachment to the LOGCAP IV Task Order 0007, (Docket Entry No. 39-3);
- the Solicitation issued by Army Contracting Command, dated December 1, 2014, (Docket Entry No. 39-4);
- the LOGCAP IV Task Order issued by Army Contracting Command, dated December 16, 2014, (Docket Entry No. 39-5);
- excerpts from the Federal Acquisition Regulations Clauses incorporated into the LOGCAP IV Contract, (Docket Entry No. 39-6);
- the Star Indemnity & Liability Company, Defense Base Act Policy, (Docket Entry No. 39-7);
- the United States Securities and Exchange Commission, Form 10-K, for KBR, Inc., dated February 24, 2020, (Docket Entry No. 39-8);

- an organization chart of Service Employees International, Inc., (Docket Entry No. 39-9);
- an organization chart of Various KBR Entities, (Docket Entry No. 39-10);
- the employment offer letters to Kevin Cloyd, Nickalandra Witherspoon, and Lucila Andrade, (Docket Entry No. 39-11);
- the Employment Agreements for Kevin Cloyd, Nickalandra Witherspoon and Lucila Andrade, (Docket Entry No. 39-12);
- KBR Job Information for Food Service Worker, Senior Security Officer, and Assistance Fire Chief, (Docket Entry No. 39-13);
- the Acknowledgement and Acceptance of Department of Defense Common Access Card for Lucila Andrade and Kevin Cloyd, (Docket Entry No. 39-14);
- the KBR Employee Acknowledgment Receipt of Code of Business Conduct Handbook for Kevin Cloyd and Lucila Andrade, (Docket Entry No. 39-15);
- the KBR Candidate Expectations of Conduct for Kevin Cloyd, Nickalandra Witherspoon, and Lucila Andrade, (Docket Entry No. 39-16);
- the KBR Dispute Resolution Agreements for Kevin Cloyd, Nickalandra Witherspoon, and Lucila Andrade, (Docket Entry No. 39-17);
- the KBR Employee Invention and Nondisclosure Agreements for Lucila Andrade and Kevin Cloyd, (Docket Entry No. 39-18);
- the KBR Employee Voluntary Disclosure Forms for Lucila Andrade and Kevin Cloyd, (Docket Entry No. 39-19);

- the U.S. Department of Labor, Defense Base Act Claims Files for Lucila Andrade, Kevin Cloyd, and Nickalandra Witherspoon, (Docket Entry No. 39-20);
- Kevin Cloyd LinkedIn Business Card, dated July 1, 2021, (Docket Entry No. 39-21);
- Lucila Andrade's resume, (Docket Entry No. 39-22);
- emails from Carlos Dixon, dated January 4, 2020 – January 7, 2020, (Docket Entry No. 39-23);
- a timeline of events, (Docket Entry No. 39-24);
- emails from U.S. Army Captain John Daley, dated January 7, 2020, (Docket Entry No. 39-25);
- emails from U.S. Army Captain John Daley, Jack Kidder, and Carlos Dixon, dated January 7, 2020, (Docket Entry No. 39-26);
- a description of Immediate Action Drills, (Docket Entry No. 39-27);
- a description of Postures and Force Protection Conditions, (Docket Entry No. 39-28);
- emails from emails from Joseph Hagan, Adnan Sinani, Robert Fenley, and U.S. Army Captain John Daley, dated January 7–8, 2020, (Docket Entry No. 39-29);
- Army Regulation 700-137, *Logistics Civil Augmentation Program*, dated March 23, 2017, (Docket Entry No. 39-30);
- Army Technical Publication 4-10.1, *Logistics Civil Augmentation Program Support to Unified Land Operations,* dated August 2016, (Docket Entry No. 39-31);

- an army news article, (Docket Entry No. 39-32);
- the deposition of Mark Lowes, dated September 2, 2021 and September 10, 2021, (Docket Entry No. 39-33);
- a CBS News article, dated August 8, 2021, (Docket Entry No. 39-34); and
- a Defense News article, dated April 13, 2020, (Docket Entry No. 39-35).

The plaintiffs submitted the following responsive evidence:

- the Deposition of Mark Lowes as KBR, Inc. Corporate Representative, (Docket Entry Nos. 42-1, 42-2);
- the Employment Agreement between Kevin Cloyd and Service Employees International, Inc., (Docket Entry No. 42-3);
- the Employment Agreement between Nickalandra Witherspoon and Service Employees International, Inc., (Docket Entry No. 42-4);
- the Employment Agreement between Lucila Andrade and Service Employees International, Inc., (Docket Entry No. 42-5);
- the Service Employees International, Inc. Data Sheet for Kevin Cloyd, (Docket Entry No. 42-6);
- the Service Employees International, Inc. Data Sheet for Nickalandra Witherspoon, (Docket Entry No. 42-7);
- the Service Employees International, Inc. Data Sheet for Lucila Andrade, (Docket Entry No. 42-8);
- the Unemployment Eligibility Letter Signed by Kevin Cloyd, (Docket Entry No. 42-9);

- the Unemployment Eligibility Letter Signed by Nickalandra Witherspoon, (Docket Entry No. 42-10);
- the Unemployment Eligibility Letter Signed by Lucila Andrade, (Docket Entry No. 42-11);
- the LOGCAP IV Contract with KBR Services, (Docket Entry No. 42-12);
- the KBR Intercompany Resource Secondment Agreement, (Docket Entry No. 42-13);
- the Administrative Service Agreement, (Docket Entry No. 42-14); and
- the Master Service Agreement, (Docket Entry No. 42-15).

## III. Analysis

### A. Preemption under the Defense Base Act

The DBA extends workers' compensation coverage under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901-950, (LHWCA), to "employees of American contractors engaged in construction related to military bases in foreign countries, and to foreign projects related to the national defense whether or not the project is located on a military base." *Fisher v. Halliburton*, 667 F.3d 602, 609–10 (5th Cir. 2012) (citing *AFIA/CIGNA Worldwide v. Felkner*, 930 F.2d 1111, 1112 (5th Cir.1991)). To determine whether an entity is an employer under the DBA, the Fifth Circuit applies the "relative nature of the work" test, which focuses on "the nature of the claimant's work and the relation of that work to the alleged employer's regular business." *Oilfield Safety & Mach. Specialties, Inc. v. Harman Unlimited, Inc.*, 625 F.2d 1248, 1253 (5th Cir. 1980). Under the "relative nature of the work" test,

> [i]n evaluating the character of a claimant's work, a court should focus on various factors, including the skill required to do the work, the degree to which the work constitutes a separate calling or enterprise, and the extent to which the work might be expected to carry its own accident burden. In analyzing the relationship of the

> claimant's work to the employer's business the factors to be examined include, among others, whether the claimant's work is a regular part of the employer's regular work, whether the claimant's work is continuous or intermittent, and whether the duration of claimant's work is sufficient to amount to the hiring of continuing services as distinguished from the contracting for the completion of a particular job.

*Id.* An employee with multiple employers may hold the employers "jointly and severally liable for compensable injuries incurred by employees." *Id.* at 1256.

KBR urges that it is the plaintiffs' employer under this test because the plaintiffs carried out the regular business of KBR in providing services to government agencies, consisting in part of "mission-critical combat support services for the military . . . includ[ing] fire protection, security and food services." (Docket Entry No. 39 at 35). KBR relies on the LOGCAP IV Contract language stating that KBR Services will provide "Combat Support and Combat Service Support" to the Army, including food service, fire protection, and security operations. (Docket Entry No. 39 at 18). KBR cites to the plaintiffs' job descriptions and letters of employment to show that their job descriptions and duties were consistent with KBR's regular business under the LOGCAP IV Contract. (Docket Entry No. 39 at 12).

KBR acknowledges that the plaintiffs received their paychecks from SEII, one of KBR's wholly owned subsidiaries. KBR also acknowledges that the plaintiffs received daily directives from KBRS. KBR argues that these entities were among the KBR wholly owned subsidiaries working on KBR's regular business activities, including the "mission-critical combat support services for the U.S. military in Iraq under the LOGCAP IV Contract." (Docket Entry No. 39 at 9). KBR argues that the evidence shows that it carries out its business activities through subsidiaries such as SEII and KBRSS II, which operated as a team to provide services to the military at Al Asad; and that the nature of the plaintiffs' work in fire protection and fighting, security, and food services was essential to the mission-critical services KBR provided the military

under the LOGCAP IV Contract. KBR urges that undisputed facts in the record show that, as a matter of law, the plaintiffs were performing the regular business of KBR. (Docket Entry No. 39 at 9).

KBR also cites the following evidence in support of its argument that the plaintiffs were employed by both SEII and KBR:

- The plaintiffs' Employment Agreements with SEII included the following statements:

> I am an employee of KBR, Inc., or its subsidiary and/or affiliate, and I represent by my signature below that I have received the handbook entitled KBR Code of Business Conduct. As an employee of KBR, Inc., or its subsidiary and/or affiliate, I understand that there are obligations and expectations outlined in the Code of Business Conduct policies regarding my employment. (Docket Entry No. 39-15 at 2).
>
> Employee's sole recourse for any injury, illness, or death against Employer and/or any other parent or affiliate of Employer arising out of or in the course of employment under this Agreement shall be determined under the provisions of the Defense Base Act. (Docket Entry No. 39-12 at 2, 20, 39).

- The plaintiffs received military base access cards and acknowledged in writing that their eligibility for the Government Common Access Cards "is tied directly to [their] employment with KBR and the sponsorship from KBR's U.S. Government Client." (Docket Entry No. 39-14)
- The plaintiffs agreed to the "KBR Candidate Expectations of Conduct." (Docket Entry No. 39 at 20; Docket Entry No. 39-16).
- The plaintiffs signed the "KBR Dispute Resolution Agreement." (Docket Entry No. 39 at 20; Docket Entry No. 39-17).

- The plaintiffs signed an "Employee Invention and Nondisclosure Agreement." The Nondisclosure Agreement bore with a KBR header and states: "As a condition of his/her employment by KBR, Inc. and/or any of its associated companies, herein collectively referred to as Employer[.]" (Docket Entry No. 39-18 at 2, 4).
- After the missile attack, the plaintiffs submitted claims for compensation under the DBA. Two of the plaintiffs list KBR as their employer. The third listed a different KBR wholly owned subsidiary, KBR Services, as his employer. (Docket Entry No. 39-20 at 9, 30, 36).

The plaintiffs urge that KBR, as the parent company of SEII, is not their employer for purposes of the DBA. The plaintiffs cite to the deposition of the KBR corporate representative, Mark Lowes, the Senior Vice President of Litigation of KBR, Inc., who explained that "[t]he entity with which [the plaintiffs] signed a contract of employment would have been SEII, and that's where their payroll sums would have come from." (Docket Entry No. 42-1 at 2). The plaintiffs argue that KBR's evidence does not show that it was their employer, or one of their employers, but rather describes the work of KBR's subsidiaries. The plaintiffs emphasize that a subsidiary, not KBR, signed the LOGCAP IV Contract. The plaintiffs urge that the regular business of KBR was issuing general policies, such as the KBR Code of Conduct, but the regular business did not include providing mission-critical services to the military. (Docket Entry No. 42 at 25–26).

The plaintiffs do not dispute the critical facts KBR relies on. The plaintiffs' arguments are unpersuasive for several reasons. First, although the precedents are scant, they are helpful to KBR. In *Fisher*, the plaintiffs were family members of civilian drivers killed in an attack on the United States military fuel supply truck convoy in Iraq. *Fisher*, 667 F.3d at 605–06. The plaintiff employees in *Fisher*, as here, worked under a LOGCAP contract between KBR, or a KBR

subsidiary, and the United States Army. *Id.* at 606. The plaintiffs sued KBR, Inc., and "various subsidiaries or affiliates (collectively KBR), who employed the decedents." *Id.* The plaintiffs did not challenge, and the Fifth Circuit did not address, KBR's status as the plaintiffs' employer. Instead, the plaintiffs urged, and the District Court agreed, that the plaintiffs' injuries were not covered by the DBA because their injuries were not "because of" their employment. *Id.* at 614. The Fifth Circuit rejected this analysis. The court explained that plaintiffs' injuries were the "quintessential case of a compensable injury[.]" *Id.* at 615. "Plaintiffs were not simply employed as truck drivers; rather, Plaintiffs were driving trucks in support of the American coalition's rebuilding and security efforts in Iraq." *Id.* at 616. The court concluded that the DBA applied and the plaintiffs' claims against KBR were barred. *Id.* at 617.

The "relative nature of the work" test is satisfied on this summary judgment record. As the plaintiffs explain, KBR "provides a number of professional services to defense, space and other governmental agencies including program management, consulting, research and development, logistics, training and security." (Docket Entry No. 42 at 11). This description is consistent with the job descriptions and employment letters for the plaintiffs' work under the LOCGAP IV Contract to work in fire prevention and protection, security, and food services. And even if KBR was responsible primarily for setting the policies and rules that the plaintiffs were required to follow in performing the military-support services, the execution of those rules and policies was a regular part of the plaintiffs' work and "a regular part of the employer's regular work." *See Oilfield Safety*, 625 F.2d at 1253.

The plaintiffs argue that the evidence that they were listed or identified in the employment paperwork as KBR employees "has no bearing on reality." (Docket Entry No. 42 at 26–27). But this argument ignores the numerous documents the plaintiffs signed acknowledging KBR as the

plaintiffs' employer. It also ignores the plaintiffs' acknowledgement of KBR as the parent company of the entities that issued their paychecks and gave them daily work directions, and the plaintiffs' knowledge of the interconnectedness of the KBR entities in providing the military support services for the LOGCAP IV Contract that the plaintiffs worked under. The undisputed facts in the record, under the Fifth Circuit precedent, prove that, as a matter of law, the relationship of the plaintiffs' work to the regular business of KBR makes KBR the plaintiffs' employer for DBA purposes. The plaintiffs' work was not a "separate calling or enterprise" from KBR's regular work of providing mission-critical support to the military. *See Oilfield Safety*, 625 F.2d at 1253.

The plaintiffs cite *McLaurin v. Noble Drilling Inc.*, 529 F.3d 285 (5th Cir. 2008), *Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811 (2001), and *Rodriguez v. Compass Shipping Co*., 451 U.S. 596 (1981), for the proposition that the exclusive remedy of compensation from an employer under the LHWCA, and therefore the DBA, does not preclude the injured party from seeking relief against a third party. These cases are easily distinguishable. They do not involve a parent and its wholly owned affiliated companies, and they do not address the employer-employee relationship. Rather, these cases accepted that the defendant was a "third party" and concluded that claims against the defendant were not preempted. In *McLaurin*, the Fifth Circuit concluded that an employee injured while working in a shipyard for the shipyard owner, was not preempted from bringing a state-law negligence claim against the vessel owner, in addition to receiving compensation from his employer, the shipyard owner, under the LHWCA. *McLaurin*, 529 F.3d at 287, 293. In *Norfolk Shipbuilding*, the plaintiff was injured while working aboard a Navy vessel, while employed by "Tidewater Temps, Inc., a subcontractor for Mid-Atlantic Coatings, Inc., which was in turn a subcontractor for petitioner Norfolk Shipbuilding & Drydock

Corporation." *Norfolk Shipbuilding*, 532 U.S. at 812. The Court explained that the LHWCA "expressly *preserves* all claims against third parties, [a]nd petitioner is a third party: It neither employed respondent's son nor owned the vessel on which he was killed." *Norfolk Shipbuilding*, 532 U.S. at 818–19. Rodriguez recognized that the LHWCA permits longshoremen to bring claims for compensation against the stevedores who employed them and claims for damages against negligent third-party shipowners. *Rodriguez*, 451 U.S. at 598–99, 599 n.5.

These cases, which did not analyze the employer-employee relationship, but instead accepted the classification of the other entity as a "third party," do not provide guidance here. The applicable test is the "relative nature of the work" test under *Oilfield Safety*, 625 F.2d 1248 (5th Cir. 1980). And under that case, KBR is an employer of the plaintiffs for DBA purposes.

**B. Preemption under the Combatant-Activities Exception**

KBR also argues that the plaintiffs' claims are preempted under the combatant activities exception of the Federal Tort Claims Act. This exception to the waiver of sovereign immunity under the Federal Tort Claims Act applies to "[a]ny claim arising out of combatant activities of the military or naval forces, or the Coast Guard, during time of war." 28 U.S.C. § 2680(j).

Courts apply a three-step test, derived from *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), to determine whether a Federal Tort Claims Act exception preempts a state law claim. First, courts identify the "uniquely federal interests" behind the exception. *Id.* at 504–07. Second, courts determine whether refusing to apply the exception to government contractors would produce a "significant conflict" between unique federal interests and state law. *Id.* at 507–12. Third, courts "formulate[] a test that ensure[s] preemption of state laws that clash[] with the federal interests at play." *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 347 (4th Cir. 2014).

Courts have applied the combatant-activities exception to defense contractors based on *Boyle v. United Techs. Corp.,* 487 U.S. 500 (1988). In *Boyle*, a marine helicopter pilot was killed after his helicopter crashed and he was unable to escape from the helicopter and drowned. *Id.* at 502. His father sued the company that built the helicopter under Virginia tort law. *Id.* at 502–03. The Supreme Court concluded that Virginia tort law was preempted because of the "uniquely federal" interests at stake and because a "significant conflict" between an "identifiable 'federal policy or interest and the [operation] of state law.'" *Id.*, at 505–07. The court explained that "uniquely federal" interests were implicated in the procurement of equipment because liability on government contractors based on the manufacturing or design would directly affect the terms of the contracts with the government. *Id.* at 506–07. The helicopter was built according to specifications that the government had approved, and the government was warned about the risks of using those specifications. *Id.* at 512. In assessing whether there was a "significant conflict," the Supreme Court interpreted the Federal Torts Claims Act provision that excludes "[a]ny claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or employee of the Government, whether or not the discretion involved be abused." *Id.* at 511 (citing 28 U.S.C. § 2680(a)). The Court concluded that "appropriate design for military equipment to be used by our Armed Forces is assuredly a discretionary function" within the meaning of § 2680(a). *Id.* at 511.

The plaintiffs argue that the combatant-activities exception under *Boyle* does not apply to government contractors except when a contractor has provided a defective product. (Docket Entry No. 42 at 34). The plaintiffs cite *Fisher v. Halliburton*, 390 F. Supp. 2d 610, 615–16 (S.D. Tex. 2005), in which the court explained that the *Boyle* exception applies to defense contractors only when the claims involve "complex equipment acquired by the Government in its procurement

process, which inevitably implicates nuanced discretion and sophisticated judgments by military experts." *Id.* at 616. This decision was appealed, but the Fifth Circuit did not reach this issue on appeal. *Fisher v. Halliburton*, 667 F.3d 602 (5th Cir. 2012).

While the Fifth Circuit has not addressed this issue, the Third, Fourth and D.C. Circuits have applied the combatant-activities exception outside the context of equipment procurement. *See In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 346–48 (4th Cir. 2014); *Harris v. Kellogg Brown & Root Servs., Inc.*, 724 F.3d 458, 479 (3d Cir. 2013); *Saleh v. Titan Corp.*, 580 F.3d 1, 7 (D.C. Cir. 2009). This serves the interest the Supreme Court recognized in *Boyle*, in "avoiding second-guessing government decisions that 'often involve[ ] not merely engineering analysis but judgment as to the balancing of many technical, military, and even social considerations.'" *Harris*, 724 F.3d at 479 (citing *Boyle v. United Technologies,* 487 U.S. 500, 511 (1988). The decisions facing military leaders and their civilian work forces on military bases as to when to evacuate civilian or military personnel require a complex mix of military tactical and strategic judgments, precisely the kind of judgments that defy second-guessing.

The first two elements of the *Boyle* test are easily met. Courts agree that the military's operational activities serve "uniquely federal interests." *See Harris*, 724 F.3d at 479 ("The two circuits that have confronted this agree that § 2680(j) represents a unique federal interest in the management of wars."). And "when state tort law touches the military's battlefield conduct and decisions, it inevitably conflicts with the combatant activity exception's goal of eliminating such regulation of the military during wartime." *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d at 349. KBR's evidence supports finding that allowing a state-law court claim against KBR for not evacuating the plaintiffs from the forward Army base where they worked, along with many other

contractors serving thousands of soldiers at the base, would produce a "significant conflict" between unique federal interests and state law.

The command-authority element of *Boyle* is also met. The two prongs of the command-authority are: (1) "whether the contractor is integrated into the military's combatant activities" and (2) "whether the contractor's actions were the result of the military's retention of command authority." *Harris*, 724 F.3d at 481. Undisputed facts in this record show that plaintiffs were injured by physical violence in a combat zone, they performed services that were "mission-critical" for the military, they were purposefully integrated into the military's operations, and they were supervised and evaluated by the military. The LOGCAP IV Contract required that the military retain exclusive command authority over security protocols, force-protection mechanisms, and evacuation decisions. This authority included deciding whether and when to seek shelter and when protective gear was appropriate. KBR did not have authority to make the types of decisions or take the types of actions that are the basis of the plaintiffs' complaint.

The plaintiffs urge that the cases applying the combatant-activities exception to a defense contractor such as KBR do not apply when, as here, the contractor was not itself operating at the base and was not the entity that signed the government contract. But the undisputed evidence shows that KBR was operating at the base through the wholly owned subsidiaries that operated together to carry out the regular work of KBR to provide critical mission support services to the military. KBR and the subsidiary entities that signed the LOGCAP IV Contract, issued the plaintiffs' paychecks, gave the plaintiffs daily directives, and otherwise supported the military presence and operations at the Al Asad base, were integrated into combatant activities and under the command authority of the military.

The record evidence supports finding that the military had exclusive control over decisions on security protocols, force protection mechanisms, and evacuation at the Army base. Under the combatant-activities exception, KBR cannot be held liable for state-law claims arising out of the plaintiffs' work at that base.

The plaintiffs' argument that they "were not working in a war zone," and that because "the United States was not at war," they could not have been involved in combatant activities, is unpersuasive. (Docket Entry No. 42 at 30–31). The Fifth Circuit has held that the "combatant activities" exception "is applicable to claims even in the absence of a formal declaration of war." *Arnold v. United States*, 140 F.3d 1037, 1998 WL 156318 at *2 (5th Cir. 1998) (citing *Koohi v. United States*, 976 F.2d 1328, 1333–34 (9th Cir.1992)). This includes "not only physical violence, but activities both necessary to and in direct connection with actual hostilities." *Id.*

**IV. Conclusion**

Both the Defense Base Act and the combatant-activities exemptions preempt the plaintiffs' state-law claims against KBR. An order of dismissal is separately entered.

SIGNED on November 23, 2021, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge